## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CHRISTIAN TORRES, on behalf of himself and all those similarly situated, 1343 E 9th St. Tucson, AZ 85719<br><br>Plaintiff,<br>v.<br><br>DNC SERVICES CORPORATION d/b/a DEMOCRATIC NATIONAL COMMITTEE 430 South Capitol St. Southeast Washington, DC 20003<br><br>and<br><br>ARIZONA DEMOCRATIC PARTY 2910 North Central Ave Phoenix, AZ 85012<br><br>Defendants. | INDIVIDUAL, COLLECTIVE, AND CLASS ACTION COMPLAINT<br><br>DOCKET NO:<br><br><br><br>**JURY TRIAL DEMANDED** |

### INDIVIDUAL, COLLECTIVE, AND CLASS ACTION CIVIL COMPLAINT

Named Plaintiff Christian Torres ("Named Plaintiff"), individually and on behalf of himself and those similarly situated, by and through undersigned counsel, hereby complains as follows against Defendants DNC Services Corporation d/b/a Democratic National Committee ("Defendant DNC") and the Arizona Democratic Party ("Defendant ADP") (hereinafter collectively referred to as "Defendants").

This case seeks compensation on behalf of all Organizers and/or Field Organizers who worked for Defendants tirelessly while being denied minimum wage and overtime compensation guaranteed by federal and state law. Specifically, Named Plaintiff alleges that he and other Organizers and/or Field Organizers were employed in non-exempt positions to assist in a

1

nationally coordinated Democratic "ground game" which sought to increase the Democratic vote.

Even while Defendants campaigned to enhance and expand the ability of low and middle income people to be paid a fair salary, minimum wage, and overtime, those same principles were ignored in denying their own Organizers and/or Field Organizers overtime pay for the extremely long hours required by campaign work. Organizers and/or Field Organizers are dedicated people who worked for Defendants because they were and remain committed to Defendants' platform, program, and ideals; they bring this lawsuit not to challenge those ideals but to vindicate them, and in so doing, do their part to ensure the continued viability of the rights created by and enshrined in the Fair Labor Standards Act of 1938.

The Organizers' and/or Field Organizers' job duties consisted of assisting in voter registration, handing out paperwork and forms to potential voters in person, reminding potential voters of deadlines, and soliciting volunteers.  Organizers and/or Field Organizers were expected and did work long hours and weekends, and regularly worked in excess of 80 to 90 hours per workweek.  Rather than hiring additional staff to reduce the extraordinary workload assigned to Organizers and/or Field Organizers, and rather than paying overtime and minimum wage as required by the FLSA and state law, Defendants instead willfully engaged in a course of conduct in violation of federal law by requiring Organizers and/or Field Organizers to work long hours without providing any overtime compensation to Organizers and/or Field Organizers. Defendants unlawfully and erroneously treated Organizers and/or Field Organizers as exempt employees under state and federal law. Named Plaintiff seeks relief on behalf of all Organizers and/or Field Organizers nationwide who were denied the benefits guaranteed by law.

## INTRODUCTION

1. Named Plaintiff has initiated the instant action to redress violations by Defendants of the Fair Labor Standards Act ("FLSA"). Named Plaintiff asserts that Defendants erroneously designated Named Plaintiff and those similarly situated ("Collective Action Plaintiffs") as exempt employees under the FLSA, and consequently, failed to pay overtime premiums beyond 40 per workweek and failed to pay minimum wage for all hours worked by Named Plaintiff and Collective Action Plaintiffs.

2. Additionally, Named Plaintiff has initiated the instant action to redress violations by Defendants of the Arizona Minimum Wage Law, Ariz. Revised Statutes, Title 23, Chapter 2, Article 8, Section 23-363 ("AZ Minimum Wage Law") and the Arizona common law tort of civil conspiracy. Named Plaintiff asserts that Defendants conspired to unlawfully deny Named Plaintiff and other similarly situated Arizona employees ("Arizona Plaintiffs") their lawful wages due under FLSA and the AZ Minimum Wage Law by failing to pay overtime premiums for hours worked beyond 40 per workweek and by failing to pay the statutory minimum wage to Named Plaintiff and Arizona Plaintiffs.

## JURISDICTION AND VENUE

3. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims herein arise under laws of the United States, the FLSA, 29 U.S.C. § 201 *et seq.* This Court has supplemental jurisdiction over Named Plaintiff's state law claim because those claims arise out of the same nucleus of operative fact as the FLSA claims.

4. This Court may properly maintain personal jurisdiction over Defendant ADP because Defendant ADP is domiciled in the state of Arizona.

5. This Court may properly maintain personal jurisdiction over Defendant DNC because Defendant DNC regularly conducted and conducts business in this state such that assertion of jurisdiction over Defendant DNC comports with traditional notions of fair play and substantial justice.

6. Defendant ADP comprises a single enterprise, single employer, and joint employer with Defendant DNC because Defendant DNC exercised a sufficient amount of operational control over Defendant ADP during the pendency of the 2016 campaign to render Defendant ADP an alter ego of Defendant DNC.

7. Venue is properly laid in this judicial district pursuant to 29 U.S.C. § § 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**PARTIES**

8. Named Plaintiff is an adult individual with an address as set forth above in the caption.

9. "Collective Action Plaintiffs" refers to individuals who are current and/or former employees of Defendants who held the job title of "Organizer," "Field Organizer," and/or who performed job duties consistent with that of an "Organizer" and/or "Field Organizer" within the last three (3) years.

10. "Arizona Plaintiffs" refers to individuals who are current and/or former employees of Defendants who held the job title of "Organizer," "Field Organizer," and/or who performed job duties consistent with "Organizer" and/or "Field Organizer" in Arizona within the last three (3) years.

11. Defendant DNC is responsible for governing the Democratic National Party, and raises money, hires staff, and coordinates strategy to support candidates throughout the United States for local, state, and national office.

12. Defendant ADP is responsible for governing the Arizona Democratic Party and raises money, hires staff, and coordinates strategy to support candidates through the state of Arizona for local, state, and national office.

13. Upon information and belief, Defendant DNC coordinates and directs strategic initiatives directly with Defendant ADP and other state democratic parties, including in strategizing and focusing on voter registration drives, get-out-the-vote initiatives, canvassing, and phone calling. Defendant DNC's coordination and direction includes directing Defendant ADP, along with other state democratic committees, to hire and retain Organizers and/or Field Organizers to assist in voter registration drives, get-out-the-vote initiatives, canvassing, and phone calling. Defendant DNC further directs Defendant ADP, along with other state democratic committees, regarding the qualifications and job duties of Organizers and/or Field Organizers, and further directs Defendant ADP, along with other state democratic committees, to classify Organizers and/or Field Organizers as overtime-exempt under state and federal law.

14. Upon information and belief, many of the strategic initiatives for which Organizers and/or Field Organizers of Defendant ADP, as well as other state democratic parties, including Named Plaintiff, perform job duties are initiatives which are designed and implemented by Defendant DNC and which are performed to benefit Defendant DNC.

15. Upon information and belief, Defendant ADP and Defendant DNC share resources and funds to assist each other in State and National coordinated campaigns.

16. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FLSA COLLECTIVE ACTION ALLEGATION

17. Named Plaintiff brings this action for violations of the FLSA as an individual action and as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all persons who were employed as organizers or in job titles with similar duties, individually or jointly, by Defendants and all other state democratic committees, and who were not paid overtime premiums and who were paid less than $7.25 per hour for all hours worked.

18. Named Plaintiff and Collective Action Plaintiffs are similarly situated, have substantially similar non-managerial job duties, have substantially similar pay provisions, and are all subject to Defendants' unlawful policies and practices as described herein.

19. There are numerous similarly situated current and former employees of Defendants who were compensated improperly for overtime work in violation of the FLSA and who would benefit from the issuance of a Court Supervised Notice of the instant lawsuit and the opportunity to join the present lawsuit.

20. Similarly situated employees are known to Defendants, are readily identifiable by Defendants, and can be located through Defendants' records.

21. Therefore, Named Plaintiff should be permitted to bring this action as a collective action for and on behalf of himself and those employees similarly situated, pursuant to the "opt-in" provisions of the FLSA, 29 U.S.C. § 216(b).

## ARIZONA CLASS ACTION ALLEGATIONS

22. Named Plaintiff brings this action for violations of the Arizona Minimum Wage Law and the Arizona common law tort of civil conspiracy as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who performed worked or work as Organizers, Field Organizers, or in similar positions in the state of Arizona who were treated as exempt from overtime by Defendant DNC and/or Defendant ADP and who worked in this capacity at any point in the three (3) years preceding the date the instant action was initiated.

23. The class is so numerous that the joinder of all class members is impracticable. Named Plaintiff does not know the exact size of the class, as such information is in the exclusive control of Defendants; however, on information and belief, the number of potential class members is at least forty.

24. Named Plaintiff's claims are typical of the claims of the Arizona Plaintiffs, because Named Plaintiff, like all Arizona Plaintiffs, was an employee of Defendants within the last three years in Arizona, held the job title of "Organizer" and/or "Field Organizer," was classified by Defendants as an exempt employee, and was not paid overtime premiums for hours worked beyond 40 per workweek, and was paid under the minimum wage for all hours worked.

25. Named Plaintiff will fairly and adequately protect the interests of the Arizona Plaintiffs because Named Plaintiff's interests are coincident with, and not antagonistic to, those of the class. Named Plaintiff has retained counsel with substantial experience in the prosecution of claims involving employee wage disputes.

26. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action. The class will be easily identifiable from Defendant ADP's records.

27. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Such treatment will allow all similarly situated individuals to prosecute their common claims in a single forum simultaneously. Prosecution of separate actions by individual members of the putative class would create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Defendants. Furthermore, the amount at stake for individual putative class members may not be great enough to enable all the individual putative class members to maintain separate actions against Defendants.

28. Questions of law and fact that are common to the members of the class predominate over questions that affect only individual members of the class. Among the questions of law and fact that are common to the class are whether the duties of Organizers and/or Field Organizers qualify for any recognized exemption to overtime.

## FACTUAL BACKGROUND

29. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

30. Named Plaintiff was directly employed by Defendant ADP as a "Field Organizer" from August of 2016 through November of 2016.

31. Upon information and belief, the state democratic parties, including Defendant ADP, are vertically integrated with Defendant DNC, and consequently, they are a joint employer of all organizers employed by all state democratic parties.

32. Upon information and belief, Defendant DNC is vertically integrated with all other state democratic committees and is consequently a joint employer of all organizers employed by any state democratic committee.

33. Collective Action Plaintiffs and the Arizona Plaintiffs ("Class Plaintiffs") worked/work for Defendants during the last three years as Organizers and/or Field Organizers.

34. Named Plaintiff's job duties consisted of making phone calls to voters, assisting in voter registration efforts, soliciting volunteers, and canvassing. Named Plaintiff's job duties further included accessing and entering data into the *Votebuilder*.

35. Named Plaintiff's job duties included making calls to individuals who were outside the state Named Plaintiff was calling from.

36. *Votebuilder* is a national online database which contains information about every registered voter in each state. *Votebuilder* is exclusive to the Democratic organization and is used by every state Democratic Party. *Votebuilder is* standardized across states and campaigns.

37. Upon information and belief, *Votebuilder* is maintained in Washington DC.

38. By entering data into the *Votebuilder* system, Named Plaintiff provided information across state lines while employed by Defendants.

39. *Votebuilder* is a common database maintained by Defendants and jointly operated and updated by Defendants.

40. Defendants sell merchandise to the public, including T-shirts, hats, buttons, water bottles, posters, signs, and other items.

41. Defendants' annual revenue from selling merchandise exceeded $500,000 in 2016.

42. Defendants license and sell access and data from *Votebuilder* to candidates and other third party organizations.

43. Upon information and belief, the revenues generated from licensing and data sales from *Votebuilder* exceeded $500,000 in 2016.

9

44. Defendants are not a recognized charity by the IRS and do not engage in charitable pursuits.

45. The for-profit corporation, Grassroots Campaign, Inc., a Colorado corporation with a principal place of business in Boston, employs canvassers with the same job duties as Named Plaintiff and Arizona Plaintiffs to conduct canvassing and organization building as a for-profit exercise.

46. Defendant DNC has retained Grassroots Campaign, Inc., to conduct canvassing operations for it in the past.

47. Grassroots Campaign, Inc., also pursues fundraising on behalf of non-profit organizations and political parties as a for-profit commercial enterprise.

48. Named Plaintiff's job duties did not relate to the management or general business operations of Defendants.

49. Named Plaintiff's job duties did not allow the use of discretion and independent judgment with respect to matters of significance.

50. Named Plaintiff had non-exempt job duties at all time while employed by Defendants.

51. Class Plaintiffs' job duties consisted of making phone calls to voters, assisting in voter registration efforts, soliciting volunteers, and canvassing.

52. Class Plaintiffs' job duties did not relate to the management or general business operations of Defendants.

53. Named Plaintiff regularly worked more than 12 hours per day and at times worked more than 14 hours per day.

54. Named Plaintiff regularly worked 7 days per workweek.

55. Named Plaintiff regularly worked more than 80 hours per workweek.

56. Defendants paid Named Plaintiff a salary of $2,500 per month, and paid no extra compensation for hours worked beyond 40 per workweek.

57. The monthly salary provided to Named Plaintiff resulted in hourly pay below $7.25 per hour (the FLSA minimum wage rate in 2016), as Named Plaintiff regularly worked in excess of 80 hours per workweek, and the monthly salary provided to Named Plaintiff resulted in weekly pay of approximately $577 per week, which is less than minimum wage when he worked 80 or more hours per workweek.

58. The monthly salary provided to Named Plaintiff resulted in hourly pay below $8.15 per hour (the AZ Minimum Wage rate in 2016), as Named Plaintiff regularly worked in excess of 80 hours per workweek, and the monthly salary provided to Named Plaintiff resulted in weekly pay of approximately $576 per week, which is less than minimum wage when he worked more than 70 hours per workweek.

59. Upon information and belief, Class Plaintiffs worked over 40 hours per workweek and regularly worked more than 80 hours per workweek.

60. Upon information and belief, Defendants paid Class Plaintiffs a $2,500 monthly salary, paid no extra compensation for any hours worked beyond 40 per workweek, and required Class Plaintiffs to regularly work more than 80 hours per workweek.

61. Defendants received a significant economic benefit in not paying statutorily-mandated wages to Class Plaintiffs by lowering their wage costs.

62. Defendants received a significant operational benefit by having Class Plaintiffs work beyond 40 hours per workweek without receiving additional overtime premium pay, as this allowed Class Plaintiffs to work significantly longer hours than they could have worked if

Defendants had been paying an hourly overtime premium for all hours worked over 40 per workweek.

63. Upon information and belief, Defendants intentionally and willfully failed to pay minimum wage and overtime premium pay in order to secure the economic and operational benefits outlined above.

## COUNT I
### Violations of the Fair Labor Standards Act
### (Failure to Pay Overtime and Minimum Wage)
### Named Plaintiff and Collective Action Plaintiffs v. Defendants

64. The foregoing paragraphs are incorporated herein as if set forth in full.

65. At all times relevant herein, Defendants were and continue to be an "employer" within the meaning of the FLSA.

66. At all times relevant herein, Named Plaintiff and Collective Action Plaintiffs were/are "employees" within the meaning of the FLSA.

67. The FLSA requires employers, such as Defendants, to compensate employees, such as Named Plaintiff and Collective Action Plaintiffs, overtime at 1.5 times their regular rate for hours worked beyond 40 per workweek.

68. The FLSA requires employers, such as Defendants, to compensate employees, such as Named Plaintiff and Collective Action Plaintiffs, minimum wage of at least $7.25 per hour for all hours worked.

69. Defendants misclassified Named Plaintiff and Collective Action Plaintiffs as exempt from the overtime and minimum wage mandates of the FLSA.

70. Named Plaintiff and Collective Action Plaintiffs regularly worked more than 80 hours per workweek.

71. Defendants failed to pay any overtime premiums for work beyond 40 hours per workweek to Named Plaintiff and Collective Action Plaintiffs.

72. Defendants failed to pay Named Plaintiff and Collective Action Plaintiffs at least $7.25 per hour for all hours worked.

73. Defendants willfully failed to compensate Named Plaintiff and Collective Action minimum wage and overtime compensation.

74. As a result of Defendants' failure to pay minimum wage and overtime premiums to Named Plaintiff and Collective Action Plaintiffs, Defendants have violated and continue to violate the FLSA.

## COUNT II
### Violations of the Arizona Minimum Wage Law
**(Failure to Pay Minimum Wage)**
**Named Plaintiff and Arizona Plaintiffs v. Defendants**

75. The foregoing paragraphs are incorporated herein as if set forth in full.

76. At all times relevant herein, Defendant ADP was vertically integrated with DNC making Defendant ADP and DNC joint employers and/or a single employer under the AZ Minimum Wage Law.

77. Defendants violated the AZ Minimum Wage Law by failing to pay minimum wage for all hours worked to Named Plaintiff and Arizona Plaintiffs.

78. Defendants willfully failed to compensate Named Plaintiff and Arizona Plaintiffs minimum wage.

79. As a result of Defendants' conduct, Named Plaintiff and Arizona Plaintiffs have suffered damages.

## COUNT III
### Violations of Arizona Common Law
(Civil Conspiracy)
**Named Plaintiff and Arizona Plaintiffs v. Defendants**

80. The foregoing paragraphs are incorporated herein as if set forth in full.

81. At all times relevant herein, Defendants ADP and DNC coordinated their employment policies and practices for organizers, including on issues of hours, pay, and activities performed by organizers, including the decision to not pay organizers overtime wages.

82. Defendants ADP and DNC intentionally failed to pay Named Plaintiff and Arizona Plaintiffs their minimum wages overtime wages due under FLSA and the AZ Minimum Wage Law.

83. Because of Defendants' conduct, Named Plaintiff and Arizona Plaintiffs have suffered damages.

**WHEREFORE**, Plaintiffs pray that this Court enter an Order providing that:

(1) Defendants are a joint employer and/or single employer under the FLSA;

(2) Defendants ADP and DNC are a joint employer and/or single employer under the AZ Minimum Wage Law;

(3) The instant matter will be adjudicated on a class and collective basis on behalf of all individuals currently or formerly employed as organizers and field organizers by Defendant DNC and/or Defendant ADP;

(4) Defendants are to be prohibited from continuing to maintain their policies, practices or customs in violation of state laws and principles of equity;

(5) Defendants are to compensate, reimburse, and make Named Plaintiff and Class Plaintiffs whole for any and all pay and benefits they would have received had it not been for

Defendants' illegal actions, including but not limited to past lost earnings. Named Plaintiff and Class Plaintiffs should be accorded those benefits illegally withheld;

(6) Named Plaintiff and Class Plaintiffs are to be awarded liquidated damages and/or punitive damages as applicable;

(7) Named Plaintiff and Class Plaintiffs are to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable law;

(8) Any and all other equitable relief which this Court deems fit.

Respectfully Submitted,

*/s/ Justin L. Swidler*
Justin L. Swidler, Esq.
Joshua S. Boyette, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Highway North, Suite 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420
Fax: (856) 685-7417
Email: jswidler@swartz-legal.com
Email: jboyette@swartz-legal.com
*Attorneys for Plaintiffs (admitted pro hac vice)*

Date: January 30, 2018

## **DEMAND TO PRESERVE EVIDENCE**

All Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Named Plaintiff's, Collective Action Plaintiffs', and Arizona Plaintiffs' employment, to Named Plaintiff's, Collective Action Plaintiffs', and Arizona Plaintiffs' cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

                Respectfully Submitted,

                */s/ Justin L. Swidler*
                Justin L. Swidler, Esq.
                Joshua S. Boyette, Esq.
                **SWARTZ SWIDLER, LLC**
                1101 Kings Highway North, Suite 402
                Cherry Hill, NJ 08034
                Phone: (856) 685-7420
                Fax: (856) 685-7417
                Email: jswidler@swartz-legal.com
                Email: jboyette@swartz-legal.com
                *Attorneys for Plaintiffs (admitted pro hac vice)*

## **DESIGNATION OF TRIAL COUNSEL**

Justin L. Swidler, Esquire of the law firm of Swartz Swidler, LLC, is hereby designated trial counsel.

                                    Respectfully Submitted,

                                    */s/ Justin L. Swidler*
                                    Justin L. Swidler, Esq.
                                    Joshua S. Boyette, Esq.
                                    **SWARTZ SWIDLER, LLC**
                                    1101 Kings Highway North, Suite 402
                                    Cherry Hill, NJ 08034
                                    Phone: (856) 685-7420
                                    Fax: (856) 685-7417
                                    Email: jswidler@swartz-legal.com
                                    Email: jboyette@swartz-legal.com
                                    *Attorneys for Plaintiffs (admitted pro hac vice)*